```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF TENNESSEE
                             WESTERN DIVISION
```

```
ABDUL NOOH,                         )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )    No. 11-2506-STA-dkv
                                    )
RECONTRUST CO., N.A., et al.,       )
                                    )
        Defendant.                  )
                                    )
```

ORDER CORRECTING THE DOCKET
ORDER DENYING THE MOTIONS TO DISMISS FILED BY VARIOUS DEFENDANTS
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On June 20, 2011, Plaintiff Abdul Nooh, a resident of Cordova, Tennessee, filed a pro se Complaint to Restrict and Prohibit Foreclosure, Motion to Set Aside Foreclosure & For Damages and Demand for Trial, accompanied by a motion seeking leave to proceed in forma pauperis. (ECF Nos. 1 & 2.) The Court issued an order on June 21, 2011, granting leave to proceed in forma pauperis. (ECF No. 3.) The Clerk shall record the defendants as ReconTrust Company, N.A. ("ReconTrust"), which was sued as Recontrust Company, N.A.; Mortgage Electronic Registrations System, Inc. ("MERS"), which was sued as Mortgage Electronic Registration System; CIT Group/Consumer Finance, Inc.; Earnest B. Williams, IV; The Bank of New York Mellon f/k/a Bank of New York, as trustee for the Certificateholders CWABS, Inc.; Asset-Backed Securities, Series 2006-BC3; BAC Home Loans Servicing,

L.P.; Discover Bank; the Internal Revenue Service ("IRS"); Arrow Financial Services; and U.S. Bank National Association ("U.S. Bank"), which was sued as US Bank Home Mortgage.[1]

This is an action to set aside a non-judicial foreclosure. The Complaint asserts claims for fraud and misrepresentation (Compl. ¶¶ 28-36, ECF No. 1), wrongful foreclosure (id. ¶¶ 37-42), slander of title (id. ¶¶ 43-48), unlawful interference with possessory interest (id. ¶¶ 49-56), and conflict of interest (id. ¶¶ 57-65). The Complaint also asserts that "Federal Reserve Notes are not money by law" (id., pp. 18-19 (emphasis omitted)) and that Defendants lack standing to foreclose (id. ¶¶ 66-77). The Complaint seeks declaratory and injunctive relief and money damages. (Id. pp. 22-23.)

On October 25, 2011, Defendant U.S. Bank filed a motion to dismiss the complaint for want of subject-matter jurisdiction and failure properly to effect service of process, pursuant to Federal Rules of Civil Procedure 12(b)(1) & (5). (ECF Nos. 10 & 11.) On November 1, 2011, Defendants ReconTrust, MERS, and The Bank of New York Mellon, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, filed a motion to dismiss pursuant to Federal

---

[1] The Clerk is directed to correct the docket to reflect the legal name of Defendants ReconTrust, MERS, and U.S. Bank, which was taken from their motions to dismiss. (ECF No. 10 at 1; ECF No. 13 at 1.)

The Complaint also purports to sue "John and Jane Does 1-20" (ECF No. 1 at 1), but service of process cannot be made on a fictitious party. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitation against those parties. See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Bufalino v. Mich. Bell Tel. Co., 404 F.2d 1023, 1028 (6th Cir. 1968). Thus, if Plaintiff seeks to sue any other individual or entity, he must identify the defendant and file a new suit within the applicable statute of limitations.

Rule of Civil Procedure 4(m). (ECF No. 13.) Plaintiff has not responded to these motions.

The motions to dismiss pursuant to Rules 12(b)(5) and 4(m) are meritless. Pursuant to Local Rule 4.1(a), service will not issue on a pro se complaint where a plaintiff has been granted leave to proceed in forma pauperis until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The Clerk is authorized to issue summonses to pro se litigants only after that review is complete and an order of the Court issues. Because the Court had not screened the case, Plaintiff has good cause for failing to serve Defendants. The motions to dismiss pursuant to Rules 4(m) and 12(b)(5) are DENIED. This order will constitute the Court's screening.[2]

The Court is required to screen in forma pauperis complaints and to dismiss any complaint, or any portion thereof, if the action —

>   (i)     is frivolous or malicious;
>
>   (ii)    fails to state a claim on which relief may be granted; or
>
>   (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in

---

[2] Before addressing a dispositive motion, the Court ordinarily issues an order directing a non-moving party who has failed to respond to show cause why the motion should not be granted. It is unnecessary to do so in this case because the action is appropriately dismissed sua sponte as to all parties for the reasons stated infra. The remaining ground for U.S. Bank's motion to dismiss is DENIED as moot.

3

Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949-50 (2009), and in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at ___, 129 S. Ct. at 1951) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would ipso facto fail to state a claim upon which relief can be granted." Hill, 630 F.3d at 470 (internal citation omitted).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for

4

> failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

Id. at 471 (internal citations & quotation marks omitted).

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), reh'g denied (Jan. 19, 1990); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Secretary of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231, 124 S. Ct. 2441, 2446, 159 L. Ed. 2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal

theories they should pursue."), cert. denied, ___ U.S. ___, 132 S. Ct. 461 (2011).

The first issue to be considered is whether the Court has subject-matter jurisdiction over this action. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[3] Federal courts are obliged to act sua sponte whenever a question about jurisdiction arises.[4] Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

The Complaint's jurisdictional allegations are as follows:

> The United States District Court for the WESTERN DISTRICT OF TENNESSEE has jurisdiction based on "diversity" pursuant to The United States Constitution, Article III, § 2 and 28 U.S.C. § 1331. This Court has jurisdiction over this action

---

[3] Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed 2d 391 (1994) (citations omitted); see also Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxite de Guinee, 456 U.S. 694, 701, 102 S. Ct. 2099, 2104, 72 L. Ed. 2d 492 (1982) ("Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 2403, 57 L. Ed. 2d 274 (1978) ("It is a fundamental precept that federal courts are courts of limited jurisdiction.").

[4] See, e.g., Ins. Corp. of Ireland, Ltd., 456 U.S. at 702, 102 S. Ct. at 2104 ("a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion"); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 287 n.10, 58 S. Ct. 586, 589 n.10, 82 L. Ed. 845 (1938); Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd., 556 F.3d 459, 465 (6th Cir. 2009) ("federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue sua sponte").

6

> pursuant to 28 U.S.C. § 2241 because Pending foreclosure sales on Plaintiff's real property is in violation of the Constitution and laws of the United States. The Court has jurisdiction under 28 U.S.C. § 1332, in that the amount in controversy is in excess of $75,000.00. The Plaintiff also invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(4) in that the Plaintiff seeks to redress deprivation of rights guaranteed by both the Constitution and federal statutes. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c).

(Compl. ¶ 10.)

The Complaint does not adequately allege that there is diversity jurisdiction. Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a).[5] A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89, 126 S. Ct. 606, 613, 163 L. Ed. 2d 415 (2005) (citations omitted). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties."[6] Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

---

[5] The Complaint mis-cites 28 U.S.C. § 1331 as governing diversity jurisdiction. That provision addresses federal-question jurisdiction.

[6] Naartex Consulting Corp. v. Watt, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); see also Johnson v. New York, 315 F. App'x 394, 395 (3d Cir. 2009) (per curiam); Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (complaint did not properly allege diversity jurisdiction); Leys v. Lowe's Home Ctrs., Inc., 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009) (complaint and notice of removal did not adequately establish diversity jurisdiction); Ellis v. Kaye-Kibbey, No. 1:07-cv-910, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008) (dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1208 (3d ed. 2004).

The Complaint does not allege the citizenship of the parties. Plaintiff is a resident of Tennessee, and the Complaint does not allege his citizenship. (See Compl. ¶ 1.) Although the Complaint alleges the states in which certain defendants are incorporated, there are no allegations about any Defendant's principal place of business. Moreover, the Complaint provides a Tennessee address for the only individual defendant, Defendant Williams. (Id. ¶ 3.)

The presence of the IRS as a party also destroys diversity. "[T]he law is clear that federal agencies, such as the IRS, are not citizens of any state and cannot be sued in diversity." Bingham v. Crosby, No. 04-1246-T/AN, 2005 WL 1155731 (W.D. Tenn. Jan. 26, 2005); see also Texas v. Interstate Commerce Comm'n, 258 U.S. 158, 160, 42 S. Ct. 261, 262, 66 L. Ed. 531 (1922); General Ry. Signal Co. v. Corcoran, 921 F.2d 700, 703 (7th Cir. 1991); Weeks Constr., Inc. v. Oglala Sioux Housing Auth., 797 F.2d 668, 676 n.10 (8th Cir. 1986). The presence of a federal agency as a party destroys diversity. Frey v. Envtl. Prot. Agency, 270 F.3d 1129, 1136-37 (7th Cir. 2001).

The other provisions cited by Plaintiff are insufficient to confer federal jurisdiction. Twenty-eight U.S.C. § 2241, which governs writs of habeas corpus, requires that the movant be "in custody." See 28 U.S.C. § 2241(c). Plaintiff is not a prisoner.

Plaintiff also cites 28 U.S.C. § 1343(4), which confers federal jurisdiction over suits "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." The Supreme Court has rejected the position that § 1343(4) "encompass[es] all federal statutory suits," Chapman v. Houston Welfare Rights Org., 441

8

U.S. 618, 99 S. Ct. 1905, 1916, 60 L. Ed. 2d 508 (1979), or "allow[s] jurisdiction without respect to the amount in controversy for claims which in fact have nothing to do with 'civil rights,'" id. at 620, 99 S. Ct. at 1917.

> [T]he Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of [that] statute[] are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which falls well outside the common understand of their terms.

Id. at 621, 99 S. Ct. at 1918. Thus, in Chapman the Supreme Court held that the Social Security Act is not a statute providing for "civil rights" within the meaning of § 1343(4). Id. at 623, 99 S. Ct. at 1919.

Plaintiff's Complaint does not allege a violation of any federal statute providing for the protection of civil rights. Although the Complaint contains scattered references to federal statutes, see, e.g., Compl. ¶¶ 16(a) (promissory note "is specifically governed by federal law," without specifying the law), 18 (referring to "FDCA," without citation or elaboration), 22 ("FDCA"), 53 (National Currency Act of 1863, 12 Stat. 665), 54-55 ("Public Law Volume 13 of the 39th Congress Stat 119-118"), 65 ("Section 23 page 106 of the 38th Congress"), 72 ("15 U S C sec. 1635(a) and (b) and 12 CFR sec. 226.23(b)"),[7] 74 (Defendants "conducted an illegal enterprise within the meaning of RICO statute"), and 75 ("civil RICO"), each of the claims asserted arises

---

[7] The statutory provision is part of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.

under state law. See supra p. 2. Moreover, just as the Social Security Act is not an "Act of Congress providing for the protection of civil rights," none of the federal statues cited in the Complaint provides for the protection of civil rights. Therefore, there is no jurisdiction under 28 U.S.C. § 1343(4).

It is also necessary to consider whether there might be subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Despite scattered references to the United States Constitution, the Complaint does not allege a constitutional violation. There also is no allegation that Defendants have violated any treaty.

The Complaint does not assert a claim arising under any federal statute. Even if the scattered references to various statutory provisions in the Complaint were construed as asserting claims under those provisions, the Complaint does not assert a valid federal claim. The only reference to the Truth in Lending Act ("TILA") occurs in a section that argues that Defendants lacked standing to foreclose on Plaintiff's real property. Paragraphs 71 and 72 of the Complaint provide as follows:

> 71. Defendant's [sic] cause of action is barred in whole or in part due to Defendant's [sic] violation of state and federal Truth in Lending Acts.
>
> 72. Said violation, in addition to the fact that Plaintiff did not properly receive Notices Right to cancel, constitute violation of 15 U S C sec. 1635(a) and (b) and 12 CFR sec. 226.23(b) and are thus a legal basis for and legally extend Plaintiff right to exercise the remedy of rescission.

10

(Compl. ¶¶ 71-72.)[8] Plaintiff presumably means that Defendants did not provide the notice required by § 1635(a).

Under 15 U.S.C. § 1635(f), "[a]n obligor's right of rescission shall expire three years after the date of consummation

---

[8] The statute provides as follows:

(a) Disclosure of obligor's right to rescind

    Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) Return of money or property following rescission

    When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. §§ 1635(a)-(b).

11

of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor...." This limitations period is not subject to equitable tolling.[9] A time-barred TILA violation is not a defense to a subsequent foreclosure.[10] Therefore, the TILA does not provide a basis for federal jurisdiction.

The Complaint also refers, in passing, to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S. C. §§ 1961 et seq. These references come in the section of the Complaint addressing Defendants' standing to foreclose. Paragraphs 74 and 75 provide as follows:

> 74. On information and belief and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all defendants share in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of his residence; acted in concert and conspiracy to essentially steal the Plaintiffs [sic] home and/or convert the Plaintiff's home without providing Plaintiff reasonable equivalent value in exchange; and conducted an illegal enterprise within the meaning of RICO statute.

---

[9] Famatiga v. Mortg. Elec. Registration Sys., Inc., No. 10-10937, 2011 WL 3320480, at *4 (E.D. Mich. Aug. 2, 2011) ("Courts in this district have interpreted § 1635(f) to completely preclude equitable tolling to the statute of limitations for a plaintiff's right to rescind."); Reed v. Duetsche Bank Nat'l Trust Co., No. 1:09-cv-692, 2009 WL 3270481, at *4 (W.D. Mich. Oct. 5, 2009) (collecting cases); Bolden v. Aames Funding Corp., No. 03-2827, 2005 WL 928592, at *3 (W.D. Tenn. Feb. 25, 2002); see also Beach v. Ocwen Fed. Bank, 523 U.S. 410, 419, 118 S. Ct. 1408, 1413, 140 L. Ed. 2d 566 (1998) (TILA "permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run").

[10] Beach, 523 U.S. at 411-12, 118 S. Ct. at 1408.

> 75. The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the congressional purpose as broadly formulated in the Statute. <u>Sedima, SPRL v. Imrex Co.</u>, 473 US 479 (1985).

(Compl. ¶¶ 74-75.)

Federal Rule of Civil Procedure 9(b), which requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," applies to RICO claims.[11] To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"[12] A plaintiff must, "[a]t a minimum," "allege the time, place and contents of the misrepresentations upon which [he] relied."[13] "Generalized and conclusory allegations that the Defendants' conduct was fraudulent

---

[11] <u>Brown v. Cassens Transp. Co.</u>, 546 F.3d 347, 356 n.4 (6th Cir. 2008); <u>Blount Fin. Servs., Inc. v. Walter E. Heller & Co.</u>, 819 F.2d 151, 152-53 (6th Cir. 1987). "The Plaintiff[] must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." <u>Masterson v. Meade Cnty. Fiscal Court</u>, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007) (citing <u>United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.</u>, 342 F.3d 634, 643 (6th Cir. 2003)).

[12] <u>Frank v. Dana Corp.</u>, 547 F.3d 564, 570 (6th Cir. 2008) (quoting <u>Gupta v. Terra Nitrogen Corp.</u>, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).

[13] <u>Id.</u> (citing <u>Bender v. Southland Corp.</u>, 749 F.2d 1205, 1216 (6th Cir. 1984)).

do not satisfy Rule 9(b)."[14] A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity.[15]

The Complaint does not even identify the provision of 18 U.S.C. § 1962 that Defendants allegedly violated, and the various references to RICO are not entitled to the assumption of truth under Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950.

Finally, the various references to the National Currency Act and the assertion that "Federal Reserve notes are not money by law" are insufficient to invoke federal jurisdiction. The theory that Federal Reserve notes are not legal tender is meritless as a matter of law, as another district court in this circuit has explained:

> In arguing that the system of lending money in the United States is unconstitutional, Plaintiff cites Sections 8 and 10 of Article I in the United States Constitution. . . . Nonetheless, ever since the Supreme Court ruled in "*The Legal-Tender Cases*," in 1884, Courts have consistently held that neither of these provisions of the Constitution renders the country's current money-lending system unconstitutional. See Julliard v. Greenman ("*The Legal-Tender Cases*"), 110 U.S. 421, 447-48, 4 S. Ct. 122, 28 L. Ed. 204 (1884) (holding that Congress has the power of making the notes of the United States a legal tender in payment of private debts, and that such power is not restricted by the fact that its exercise may affect the value of private contracts); United States v. Rigen, 577 F.2d 1111, 1113 (8th Cir. 1978) (art. I, § 10 of the Constitution does not "limit Congress' power to declare what shall be legal tender for all debts," and the fact that the type of money in use is neither gold nor silver does not render a loan unconstitutional); Foret v. Wilson, 725 F.2d 254 (5th Cir. 1984) (dismissing plaintiff's argument that only gold and silver coin may be constituted legal tender by the United States); Edgar v. Inland Steel Co., 744 F.2d 1276, 1277 (7th Cir. 1984) (finding untenable

---

[14] Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).

[15] 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297, at 72-73, 101 (3d ed. 2004).

plaintiff's argument that federal reserve notes are not "money" because they are not backed by gold and silver specie); L.R. Nixon v. Phillipoff, 615 F. Supp. 890 (N.D. Ind. 1985) (finding that plaintiff's [sic] misinterpreted art. I, §§ 8 and 10 of the Constitution, and holding that Section 10 acts only to "remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender"); Kolb v. Naylor, 658 F. Supp. 520 (N.D. Iowa 1987) (finding that the loans to plaintiffs constituted the lending of money and the creation of a debt, rather than the creation of money); United States v. Schiefen, 926 F. Supp. 877 ([]D.S.D. 1995) (noting that Schiefen's argument that United States currency is unconstitutional "unbacked paper" has been rejected by numerous courts); State ex rel. White v. Mack, 93 Ohio St. 3d 572, 757 N.E.2d 353, 355 (Ohio 2001) (citing Baird v. Cty. Assessors of Salt Lake & Utah Ctys., 779 P.2[2d] 676, 680 (Utah 1989)) (finding that the provision in art. I, § 10 of the United States Constitution is not a directive to states to use only gold or silver coins, but is "merely a restriction preventing states from establishing their own legal tender other than gold or silver coins").

Nixon v. Phillipoff provides a thorough analysis of why courts consider federal reserve notes to be a constitutional form of legal tender. See 615 F. Supp. 893. In Nixon, plaintiff, a pro se litigant, sued the individual who had filed a mortgage foreclosure action against him, the clerk of court who had accepted the filing fee for that foreclosure, and the judge who had accepted jurisdiction over the foreclosure. See id. at 890. Plaintiff's argument rested, in part, on his assertion that art. I, § 10, clause 1 of the United States Constitution requires a state to accept and recognize only gold and silver coin as legal tender. See id. at 893. The court, however, rejected Nixon's argument, concluding:

> Nixon's interpretation of article 1, § 10 creates a rather curious inconsistency with article 1, § 8, clause 5. If states can only recognize gold and silver coin as legal tender, then Congress does not have complete power to declare what shall constitute legal tender for payment of all debts, for a declaration that a treasury note or federal reserve note was legal tender would fly in the face of the restriction of § 10. While this is the conclusoin [sic] which Nixon wants this court to reach (in effect declaring federal reserve notes illegal), it flies in the face of the clear import of § 8, clause 5's unrestricted language. The power to coin money necessarily carries with it the power to declare what is money, and the constitution does not limit

15

> Congress to gold and silver coin ... It strains logic and constitutional interpretation to claim that the framers of the constitution sought to limit Congress' power to coin money via an implication derived from a restriction directed not at Congress but at the states.

Id. at 893. Moreover, the court explained that,

> Nixon has misinterpreted the import of § 10's prohibition. Courts have uniformly interpreted § 10 as prohibiting states from declaring anything other than gold or silver coin as legal tender ... yet ["*The Legal-Tender Cases*"] do not interpret § 10 as requiring states to accept only gold and silver coin as tender, nor could they, as they both recognize the unrestricted power of Congress to declare what shall constitute legal tender, including bills of credit, treasury notes, and federal reserve notes. In short, § 10 acts only to remove from the states the inherent sovereign power to declare currency, thus leaving Congress the sole declarant of what constitutes legal tender. Thus ... the states are constitutionally compelled to accept [federal reserve notes] as legal tender.

Id.

In this case, where Plaintiff's arguments all rest on his assertion that, according to art. I, §§ 8, and 10 of the constitution, Defendants unconstitutionally created money, his argument fails as a matter of law. Private parties may enter into transactions to trade whatever they agree upon as having equal value, and they are not limited to gold and silver coins. . . . Though Plaintiff asserts that Defendants' loans were unlawful because they did not provide him with any "real, gold or silver backed money" as constitutionally mandated, as evidenced above, Courts have long held that such transactions are both legal and constitutional. Hence, Plaintiff's claims are entirely without merit.[16]

Finally, Plaintiff's contention that mortgages having a term longer than five years are illegal (Compl. ¶ 56) is meritless.

---

[16] Rudd v. KeyBank, N.A., No. C2-05-CV-0523, 2006 WL 212096, at *4-6 (S.D. Ohio Jan. 25, 2006); see also Rahman El v. First Franklin Fin. Corp., No. 09-cv-10622, 2009 WL 3876506, at *7 (E.D. Mich. Nov. 17, 2009) (same, collecting cases) (report and recommendation adopted by district court).

12 U.S.C. § 371 expressly authorizes national banks to engage in real estate lending, and provides, in relevant part: "Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to section 1828o of the title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order." 12 U.S.C. § 371(a). Section 1828o does not contain a time limitation. While 12 U.S.C. § 29 does prohibit a national banking association from holding "the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a period longer than five years," this provision is inapplicable to plaintiff's Complaint because plaintiff does not allege, nor does it appear from the record, that any defendant ever possessed the property that is referenced in the note and in plaintiff's complaint.[17]

For all the foregoing reasons, the Court DISMISSES the Complaint for want of subject-matter jurisdiction, pursuant to Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure. Judgment shall be entered for Defendants.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal would be frivolous. Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

---

[17] Barnes v. Wells Fargo & Co., No. 4:10CV619 FRB, 2010 WL 3911405, at *4 (E.D. Mo. Sept. 30, 2008); see also Barnes v. Citigroup, Inc., No. 4:10CV620 JCH, 2010 WL 2557508, at *3 (E.D. Mo. June 15, 2010) (12 U.S.C. § 29 "inapplicable, as Defendants do not possess Plaintiff's home"). "[T]hirty-year mortgages are common in the lending industry." Wilson v. Bank of Am. Corp., No. 4:10-CV-512 CAS, 2010 WL 3843781, at *4 (E.D. Mo. Sept. 27, 2010); see also Barnes, 2010 WL 2557508, at *3 ("[N]ational banks are permitted to 'make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate,' and thirty-year mortgages are common in the lending industry.").

17

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Federal Rule of Appellate Procedure 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3)(A) provides that if a party was permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. Id. at 445, 82 S. Ct. at 921. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for want of subject-matter jurisdiction also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not

proceed on appeal *in forma pauperis*. Leave to proceed on appeal *in forma pauperis* is, therefore, DENIED.[18]

IT IS SO ORDERED this 29th day of March, 2012.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[18] If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.